Osage Indian Lands — Allotted — County Boundaries The lands of the Osage Tribe have been allotted within the meaning of the Oklahoma Constitution, Article XVII, Section 8. Part of Osage County could be annexed by another county under the provisions of 19 O.S. 31 [19-31] — 19 O.S. 32 [19-32] (1961), without passage of a special act of the Legislature. The mineral rights held in community by the Osage Tribe in Osage County would not be affected by the annexation of a portion of Osage County to another county. The Attorney General has had under consideration your letter dated January 17, 1968, wherein you ask in essence three questions. First, you ask: Has the land within Osage County been allotted within the meaning of Article XVII, Section 8 of the Oklahoma Constitution? Article XVII, Section 8 of the Oklahoma Constitution provides in relevant part: "The Osage Indian Reservation with its present boundaries is hereby constituted one county to be known as Osage County; the present boundaries to remain unchanged until all the lands of the Osage Tribe of Indians shall have been allotted, and until the same shall be changed as provided by the Legislature for changing county lines. Pawhuska is hereby designated the County Seat of Osage County." 3 C.J.S., page 887, defines the term "allot" as follows: "To set apart a thing to a person as his share; to set apart a portion of a particular thing or things to some particular person; to divide or distribute, as by lot, to distribute or parcel out in parts or portions . . . . In particular connections, the word, used in the past tense, has been held to imply a full partition of the land allotted . . . ." The Act of Congress of June 28, 1906, 34 Stat. 539, is referred to as the Osage Allotment Act. United States v. Hale, 39 F.2d 188
(N.D. Okla. 1930). The title of said Act reads: "An Act for the division of the lands and funds of the Osage Indians in Oklahoma Territory, and for other purposes." Section 2 of said Act provides: "That all lands belonging to the Osage Tribe of Indians in Oklahoma Territory, except as herein provided, shall be divided among the members of said Tribe, giving to each his or her fair share thereof in acres, as follows: * * * Section 2 is then divided into twelve subsections. Subsections one through four provide for the first, second, and third selection of 160 acres by members of the Tribe. Subsection five provides: "After each member has selected his or her first, second, and third selections of one hundred and sixty acres of land, as herein provided, the remaining lands of said tribe in Oklahoma Territory, except as herein provided, shall be divided as equally as practicable among said members by a commission to be appointed to supervise the selection and division of said Osage lands." Subsections six and seven provide for the division and sale of the lands under the direction of a Commission to be appointed. Subsection eight "reserved from selection" certain land to be "set aside and donated to the Sisters of St. Francis and also reserved from selection" certain land for the dwelling places of three named individuals with one allowed lo purchase forty acres at an appraised value with the proceeds to the tribe. Subsection nine "reserved from selection" 160 acres near Gray Horse and 160 acres near Hominy for use by the Osage for dwelling purposes. Subsection ten "reserved from selection" the Osage Boarding School. Subsection eleven provided for the sale of government buildings in Pawhuska and Subsection twelve granted the Pawhuska cemetery to that town. It seems apparent that the intent of the Act was to divide all the lands of the Osage Indians in Oklahoma Territory. This is indicated by the language of the title that it is "An Act For the division of the lands" of the Osage and by Section 2 that "all lands" shall be divided as provided. Also Subsection five provides all lands not selected and not reserved shall be divided equally among the tribe. It is apparent that the purpose here was to dispose of all lands not disposed of otherwise. The fact that certain lands were "reserved from selection" does not indicate a failure to allot since the term "selection" is not synonymous with "allot." Each of the lands reserved from selection were set aside or partitioned from the tribal lands and this is sufficient to comply with the definition of allotted as lands set apart, divided, distributed, or partitioned. Therefore, it is the opinion of the Attorney General that Congress by its Act of June 28, 1906, 34 Stat. 539, allotted all the lands of the Osage Tribe within the meaning of the Oklahoma Constitution, Article XVII, Section 8. To enable a part of Osage County to be annexed by another county would a special act of the Legislature be required? The Enabling Act, Section 21, provides in relevant part that the Osage Indian Reservation, ". . . shall remain a separate county until the lands in the Osage Indian Reservation are allotted in severalty and until changed by the Legislature of Oklahoma . . . ." The Oklahoma Constitution, Article XVII, Section 8 provides in relevant part with reference to Osage County that the present boundaries shall remain unchanged, ". . . until the same shall be changed as provided by the Legislature for changing county lines." The Oklahoma Constitution, ArticleXVII, Section 4 provides in part: "The Legislature shall provide by general laws for . . . altering or changing lines . . . Provided, that when territory is to be transferred from an existing county to either a new or an existing county, there must be sixty per cent of the vote cast in such particular territory in favor of the transfer, and, in case the transfer be to an existing county, the acceptance of such territory must first be approved by a majority vote of the electors of said county, at an election to be called and held therefor, as may be provided by law. . . ." 19 O.S. 31 [19-31] (1961), provides in part: "If the object sought be to transfer territory from one county to an existing county, and if sixty per cent of the votes cast at said election vote `yes', the Governor shall . . . issue his proclamation calling an election to be held in the county to which said territory is sought to be transferred, . . ." 19 O.S. 32 [19-32] (1961), provides: "Upon the holding of any election in any county to vote upon the acceptance of the territory which is seeking to be transferred to said county, the board of canvassers shall certify and return said vote to the Governor as required by law, who shall thereupon, and within ten days thereafter, declare the result of said election, and if it appears that a majority of the votes cast at said election be in favor of accepting said territory, he shall, within ten days thereafter, issue his proclamation declaring said territory legally transferred to said existing county, and cause the will of the election to be carried into effect." It would appear that the intent of the Enabling Act, Section 21, has been fulfilled in the Oklahoma Constitution, Article XVII, Section 4. In any event, it is the provisions of the Oklahoma Constitution that would govern and not the Enabling Act. Coyle v. Smith, 221 U.S. 559,31 S.Ct. 688, 55 L.Ed. 853. It is apparent that 19 O.S. 31 [19-31] — 19 O.S. 32 [19-32] (1961), is the implementation of the Oklahoma Constitution, Article XVII, Section 4, and the Section 21 of the Enabling Act. In these statutes the Legislature has provided "for changing county lines." Accordingly, the use of these statutes to change the Osage County boundaries would comply with the provisions of the Constitution, Article XVII, Section 8, that said boundaries shall remain the same "until the same shall be changed as provided by the Legislature for changing county lines." Therefore, it is the opinion of the Attorney General in answer to your second question that it is not necessary for the Legislature to pass a special act to enable part of Osage County to be annexed to another county since the Legislature under Article XVII, Section4 of the Oklahoma Constitution has provided the method of changing county lines in 19 O.S. 31 [19-31] — 19 O.S. 32 [19-32] (1961). Would the mineral rights held in community by the Osages under the entire county be affected by the annexation of a portion of the surface of Osage County to another County? The Act of Congress of June 28, 1906, 34 Stat. 539, Section 3, reserved the oil, gas, coal, or other minerals of the Osage Indians to the Tribe for 25 years after April 8, 1906. Congress in its Act of June 24, 1938,52 Stat. 1034, in Section 3 amended an Act of Congress of March 2, 1929, 45 Stat. 1478, so that, ". . . the oil, gas, coal, or other minerals, covered by said lands of the Osage Indians in Oklahoma are reserved to the Osage Tribe, until the 8th day of April, 1983, unless otherwise provided by Act of Congress, and all royalties and bonuses arising therefrom shall belong to the Osage Tribe of Indians . . . ." A change in the county boundary or annexation of part of Osage County to another county would not affect the mineral rights or ownership. Therefore, in answer to your third question it is the opinion of the Attorney General that any annexation of parts of Osage County or change in the county boundaries would not affect the mineral rights held in community by the Osage Tribe. (Penn Lerblance)